Good morning, and may it please the Court, I'm Elizabeth Newman, representing Mr. Gerritsen, and I'd like to begin with a discussion of the advisement about penalties. Counsel, we don't confer beforehand, so I don't know if my colleagues and I have the same initial take on the case. But my thought is save some time for rebuttal, because your adversary is going to get a lot of questions about Forrester. Perfect. Thank you, Your Honor. I don't mean to cut you off, but No, I appreciate. I certainly appreciate the guidance. Then very briefly about penalties. The question for the Court is what Mr. Gerritsen understood at the moment of his waiver. And it's clear that at the moment of his waiver in July of 2005, he was misadvised. Why is it at the moment of the waiver? Because the language, I guess, in Forrester is something along the lines of, in the same proceeding. Erskine is very clear. Erskine was the case. Yes. Erskine is very clear that the relevant question is what the defendant understood when he waived his right to counsel, or in the words of Erskine, when he purportedly waived his right to counsel. But it's not at the moment of the waiver. It's within the at the particular stage of the proceedings at which he purportedly waived his right to counsel. And so at the stage of the proceeding was at, I guess, at this magistrate hearing where the government filed the first superseding indictment. In fact, he did waive again, or confirmed his waiver again, and then subsequently heard about the penalties. Now, why isn't that at the particular stage of the proceedings? Because everyone – well, I would disagree that it's at the same stage of the proceedings, because there – when you're taking a waiver of a right to counsel, everyone is focused on exactly what is involved. And the stage of the proceedings is the state is the – from arraignment right up through trial. Because that's what the Supreme Court has said is really important in Patterson, that the – the rigor of the waiver depends on what stage of proceedings is relevant. It's a pragmatic – it's a pragmatic analysis. That's what the Supreme Court said in Patterson. And therefore, when you're thinking about waiving counsel for trial, the rigor of the waiver is at its most extreme. So are you saying that when he – at the magistrate hearing, when he reiterated that he was representing himself, that that didn't constitute a waiver? No. I mean, yes, that is what I'm saying. Everyone walked into that proceeding believing that the waiver that had been taken in July was still in effect. That was the – those were the first words out of the party's mouth. Mr. Garrison has already waived counsel. Now, it's true that he in fact repeated it a couple of times that he was waiving and that he was representing himself. He did. But when – So are you saying the magistrate judge had to go through the colloquy that was previously – No. I'm not, Your Honor, except that if Mr. Garrison's waiver is to have been valid, then yes. I mean, if his – then yes, the magistrate judge was required to do that because the waiver that was taken in July was invalid, was inadequate. And so if that – if a waiver is to be saved, then the government has the burden of showing you that Mr. Garrison waived again in October in front of the magistrate. I'm sorry, Your Honor. Counsel, if I recall the facts right, which I may not, the whole problem in the case is he was told that he's looking at a max of 22 years, and actually he's only looking at a max of 20 years. Well, 15, because he doesn't have a qualifying prior. Right. Well, also, Your Honor, he was – I can't – I'm leaving out the other – Right. The argument about whether the other things he was told about how – what a bad idea it is to represent yourself or adequate. The penalty is the part I'm asking about. I know Forrester says that really matters, because a middle-aged man might think that a shorter max makes it more worth getting an attorney and fighting. In this case, given how small the difference is, I don't understand what the practical significance is. If you didn't have Forrester, I don't see why you'd have a case. Well, I think I would still have a case because of Erskine, Your Honor, but I think obviously Forrester makes my case a lot better. But I think that the lesson of both Erskine and Forrester is that speculation can't be indulged in, because any speculation about why a defendant might have waived in one circumstance – When you don't like – when a person doesn't like logic, they call it speculation. Lawyers and judges do that all the time. I mean, but the Court has actually said that, that no one can – Look, the idea in Erskine is, if I think the most I'm looking at is a year to serve, and as a practical matter, they don't put people in jail for this, they just fine them, well, then I may not want to spend a few thousand dollars on a lawyer. But if I'm looking at many years to serve, then I want a lawyer. A lot of people, back when drunk driving was treated more leniently, used to waive counsel for drunk driving for that reason. First offense, they didn't go to jail. But when it's in the other direction, you're told this is something very grave in terms of the penalties, and then it turns out to be just a little bit less grave in terms of penalties. I don't understand why it would matter generally, even though I have to accept that under Forrester, and I don't understand why it would matter in this case. Well, I think another aspect of it, Your Honor, is that you can look at how that 20 or 22 years is distributed. For example, on count one, that was the major count in this case. The actual maximum sentence was 10 years on count one. At the — in July, when Mr. Gerritsen formally waived his right to counsel, he was told that his maximum was actually 15 years. And I think even if the Court has a little bit of trouble accepting that a difference  you had a better prosecutor, and he really studied the penalties, which are kind of complicated, and he read a correct script, he said, well, the maximum penalty is 15, but if there's a qualifying felony, it's 20. He went through the whole thing, and he went through it on each count. It strikes me that it would be incomprehensible gobbledygook. All it would mean as a practical matter is, gee, I'm looking at a fair amount of time if they max me out. And he knows that, regardless of the prosecutor's error. It's a very easy error to make. I think there are two answers, Your Honor. One is that while I think the Court's approach is a very pragmatic one, Erskine and Forrester say that the approach has to be a little bit distinct. And the second answer is — If all we had was Erskine, I'd have no problem distinguishing the case where the penalty is understated. Right. But the other — the other — the other is — Or overstated. Right. But, I mean, the other answer, Your Honor, is that — well, I'm sorry, I've lost my train of thought. But in that case, Erskine — well, Forrester, at any rate, says that the analysis has to be a specific one in which the kind of sort of overall pragmatic determination is really not the approach that the Court can take. Got it. Unless the Court has other questions in view of the Court's guidance, I would like to reserve the balance of my time. Thank you, counsel. Thank you, Your Honor. Counsel? May it please the Court, Daniel Levin on behalf of the government. Counsel, you've probably figured out exactly what I'm thinking. Yes. What I'm thinking is it makes absolutely no sense to me that when the penalty is overstated that the waiver of counsel might not have taken place but for the overstatement. However, Forrester says so, and we are bound by our precedent. So I don't understand how you can distinguish Forrester. I don't see what choice we have but to vacate. Well, let me talk about Forrester, then. Forrester, there were — in fact, there were two problems with Forrester. The Senate wasn't told about the charges at all, and he was told that the penalty he was looking at was the minimum of 10 years, maximum of life. In fact, it was 0 to 20. In Forrester, the government had argued, with respect to penalty there, that an overstatement just didn't matter as a practical matter. It was a lot of time. You're told even more, you'd be even more cautious. That was effectively the government's argument, and the court rejected that argument and said, no, because it might change the calculus, and that would go to the — to whether the waiver was really knowing and intelligent, and it rejected that argument. But it's very careful when it does so. It says a material misstatement of the penalty, and it says material three times in the opinion. Every time it talks about it, it talks about a material misstatement. I think it's at 507 and 508, and then again in the footnote on 508, it says material misstatement. And for that to mean something, I think this case is an example of a non-material misstatement. I was always warned against adjectives, because this is exactly what you get into. Misstatements compared to material misstatements. Without compared to utterly without. So that's what you're asking us to do, is conclude this is not a material misstatement because 22 is close to 20? That's part of it, Your Honor, but it's — part of it is that, from an objective standpoint, 22 is close to 20. It's 10 percent off. And it's certainly not the difference between a 10-year mandatory minimum in life versus zero to 20. But I think the reason it uses the material language there is because there's a concern about moving from the touchstone under Ferretta is, is the waiver knowing and intelligent? And this Court has imposed on top of that some prophylactic guidance, essentially, that the defendant be told about the dangers, the disadvantages, the penalties, the prophylactic guidance. And there's a difference between a problem in the colloquy and a problem in the waiver. Are you relying entirely on footnote 3 in Forrester for the adverb materially? It's in — I believe it's footnote 3, but it's also just above that. In the paragraph just above it, he says, By materially misstating the applicable sentence, the Court failed to fulfill its obligation to ensure the defendant understands the sentence. The way I read that, I wasn't sure I could make much of it because the footnote is an even-if footnote. Well, but that's the thing. Condition contrary to fact is usually suggested by even-if. And then when I read the text on the page, it seems to be saying overstatement is as bad as understatement. Well, but when the Court characterizes it, it's saying — it says — but when it's saying overstatement is as bad as understatement, what it's doing is it's rejecting the government's argument that said Erskine is the limit. Understatement is a problem. Overstatement isn't. And it's saying, no, they're both problematic in different ways. But when it actually talks about the misstatement, it does use that phrase, materially. It uses it just above. How do we draw a line about what's material and what isn't? When we're talking about deprivation of liberty, we've said even a day can be material. Well, Your Honor, I think there's — there's — the objective component that I mentioned a moment ago, that it's two years, 10 percent is two years, 20 to 22. But it's also — Just pause for a second. Do you want to spend the next two years in jail? No. Of course not, Your Honor. And that's — I think that — but the point isn't the two years. Of course, two is a lot of time. There's no question about that. But the question is, is not is there an error in the copy, but is the whole waiver unintelligent and unknowing? So that's the — that's the baseline. But the other fact here that I think is — is — makes this a stronger case for the government is that when the defendant hears later at PIA that the — he hears the proper penalty read to him, he doesn't have any effect on it. He never says, now that I — now he understands what the penalty is. And that is evidence that it didn't matter to him. So it's subjective evidence that it wasn't material to this defendant. I don't — oh, wait. What did he say that makes it not material to him? The fact that he — the fact that he hears — what happens is he — he initially says at PIA — You're talking about the magistrate hearing. The magistrate hearing. Yes, exactly. Oh, the correct advice. The correct advice. My problem with using that was he wasn't invited then. After getting the correct advice, he wasn't invited to change his mind. He wasn't expressedly invited, no. But he's asked, does he understand what's going on? He says, yes, he does. Then the prosecutor stands up and says, well, I think Your Honor's already asked him, does he want to go pro se? And the court says, yes. And then a moment later — it's the next page in the transcript, I think — defense counsel, his — his standby counsel from the public defender's office says, Your Honor, we're going to make a motion to withdraw because we don't believe we can be a standby counsel. And the court's response is — you know, tells the defendant, well, it looks like you're going to be on your own. And the defendant's response to that — now he's been told that he's going to have no advisory counsel. And he says, well, then I guess the government should just mail the documents to me. There's no — there's nothing in there. And it's implicit, not explicit. On one of those two occasions, the prosecutor had saved the record. It certainly would have been, Your Honor. One thing that struck me here is that when I was a district judge, I couldn't figure out what the maximum penalty was. You look in those Federal statutes, and they're really complicated. They have all these subsections and stuff about the friars. And I don't know the guy's record. I don't know anything about him. And going there to do the hearing, you really can't figure it out. But the prosecutors are always issuing press releases and telling the press he could face a max of 475 years in prison or something. So I guess they figure it out and write a script and read it. I think what you're having — It sounds like under Forrester we're saying the script has to be right, whether it matters or not. I think that would be pushing Forrester one more step. And I don't think that's necessary, because I think — and I think that Judge Kaczynski's opinion in Cordova v. Baca, which makes the point, draws the distinction. We said it in a footnote on the standard of review. But it draws the distinction between errors in the colloquy and errors in the waiver. But to push Forrester that one step further and say, unless that script is just right on, like it was at the — at the magistrate hearing, the conviction gets reversed, the waiver is known, it's a structural error, just doesn't make any sense. Because the structural error is the denial of right to counsel. It's not a problem in the waiver. It's like the Rule 11 context. You can have a problem in the colloquy. You just can't have a problem in the waiver itself. So that's why I think the Court shouldn't push Forrester that one more step. But that — I think what the Court was doing in Forrester — What's the additional step now? To say — to say any misstatement, period, full stop. Any misstatement of the penalty? Any misstatement of the penalty, full stop, that means the waiver is unknowing, that structural error, conviction reversed. And I just think that's — Why — why not? At least it would make it an easily comprehensible, applicable case, and the prosecutors would prepare a correct script before they went to court. It would certainly put people — it would certainly put people on notice. But there — it just doesn't — there's so few areas that are structural error, and they really go to fundamental problems with the trial, the full — the having no counsel when you have a six-minute right to one. What can we — what can we do? It looks like the language in Erskine and Forrester pretty much commits us to that. Well, I think the language in Erskine and Forrester, in many instances, they're going to be — when they're prompted with possible penalties, and I think everyone is on notice, based on Forrester and Erskine, that you need to get the penalties. But I actually think what happened here is, after realizing after the hearing that you misstated the penalties, that's why the penalties were read again at the magistrate hearing in an attempt to — to get on the record the proper — the proper penalty. But I don't think it's necessary to have a — a bright-line, per se, reversal rule when — when the error doesn't necessarily call into question the knowing and intelligence of the waiver, because that's the structural problem, not the — not the political problem. So to write an opinion along the lines that you suggest, we would have to rely almost entirely on the word material. Is that right? Well, I think — I think — I think it's distinguishable and different because it's — the variance was not material. I think — I think that is — yes. I think that's the — If you go back to Judge Ikuda's question, how do we formulate a five-part test, or whatever you want to call it, to decide whether something's material? You seem to suggest that it's not the amount of time that makes any difference, but then you look at the rest of the record and try to tease from it whether or not the guys seem to care one way or another what the penalty is. I think it's — frankly, I think it's a combination of those two. There's an objective component to it and a subjective component to it. And I think here we have both. We have — when you look at the totality of the record, some evidence — Well, now it's beginning to sound like something we have to remand to the trial court for some kind of an evidentiary hearing to decide whether the subjectivity and the objectivity come together to indicate materiality. Well, there is — I mean, there is some precedent for a limited remand. Kimmel, this Court, did order a limited remand in the Ferretti case. But I think — I don't think a limited — a remand is necessary here because it's not a question of bringing the defendant in after the fact and asking questions about wouldn't it have made a difference. But it's a question of looking at both the — Well, why is it? What if the defendant comes in and says, holy cow, if I would have known, I wouldn't have done it? Well, the defendant — the defendant may come in — the defendant obviously has an incentive to say that because it's a — it's an automatic reverse of this conviction. But the credibility, then, is for the trier of fact. Well, you certainly — that certainly could be one route to do it. I mean, I'm not saying — I'm not opposing that — that solution, Your Honor. I'm just saying that I think from the record here, there's sufficient indicia that his waiver — and ultimately, it's the waiver, is knowing and intelligent. I think there is sufficient indicia, both because the — the overstatement was small or relatively small. It sounds like we're just supposed to sweep the chess pieces off the — off the board and say it's not material. Well, I think — I think that when Forrester says material, it means something, because otherwise — otherwise Forrester could have written an opinion and said when the penalties are wrong. You want to bet that they didn't even pay any attention to the word material in Forrester? I — You want to bet? Well, you know, I doubt — I really do doubt that because it is in there. It's in there three times. And I think — I think it's — They didn't say, and if it's not material or materiality is such — and it's material in this case. No, they clearly said it was material in this case. They say it at 507. It was materially misstated in this case. So then they don't need to sort of — it would be dicta to start saying to draw a line where is material. And I'm not asking the Court to draw a bright line. This is material. This is an — 11 percent is the line. You should have a line where it depends on what panel you draw? No, Your Honor. You should have a line that depends on applying a judgment, which happens all the — there's material — materiality comes up in 100 contexts in the law, and people apply it on a fact-specific basis. And that's what we're asking for here. Thank you, counsel. Thank you. You got your job assignment materially. Certainly. Your Honors, I think the proper focus is what is Feretta supposed to do? Feretta is supposed to allow people to waive counsel who really want to and who really know what they're getting into, or at least are really told what they're getting into. What should we do about materially? I think it's a hard question, frankly. I agree that it's not — it's not a material part of Forrester, if the Court will allow me to say so. I also believe that there's a little bit of tension between saying — if you say it has to be a material difference, but you can't speculate on what it might have meant to a defendant one way or the other, because both Erskine and Forrester talk about how you're not allowed to go there, because any sort of guesswork about it could be meant by counter-guesswork. I think it creates a lot of problems on remand to say — well, to say at all that there should be a remand, because — Are you saying that a trivial error would vitiate a waiver? I don't think so, Your Honor. But I'm not sure what a trivial error would be. As the Court has — as the Court pointed out, a day is a material amount of time. That we look at the — all of the circumstances of the case, as we've done in so many other lines of jurisprudence, and say, this is material, this isn't. What's wrong with doing that? I think there are two problems with it. And one is that the — the case law in the Feretta context says specifically that the only thing you're really allowed to look at is what the defendant understood at that moment. And you can only look at other things in the case to see if they shed light on what the defendant understood at that moment. But the other problem in the case of looking at everything to see, you know, what is material and what isn't, is that material is — is, as far as I can see, generally defined as what would have made a difference, you know, in this — in this context. And you can't do that without asking what would have made a difference to somebody. But you're not allowed to ask what would have made a difference to somebody. I mean, the case law is really clear. It's a bright line. You have to go back. And that's really sound from a policy perspective. Kennedy, what was the actual sentence that Mr. Garrison — Garrison received? 84 months, Your Honor. 84 months? Yes, of which he served 36. So now he's trying to go back and go for 15 years? He's trying to go back, Your Honor. And I mean — Where he's exposed to 15 years. He's exposed to 15 years. Does he know that? Is he aware of that? Did you advise him of the maximum that he's looking at if he goes back? He's aware of what's at stake, Your Honor. But I think that — that one of the policy reasons for just doing a straight remand on this case is, one, that it will encourage judges and prosecutors to use their bench book on the one hand and state the penalties correctly on the other, which is something that this Court has reiterated in its credit jurisprudence. This is really important. I don't remember the bench book helping with the penalties. Well, perhaps the bench book — I don't think anyone can do it except the prosecutor. No. The penalties, no. The prosecutor really is the one who knows the ins and outs of that. I mean, perils and pitfalls, stuff like that, they're the bench book. I think — well, of course, I defer to the Court's superior knowledge, but I would think it would help. But that way, you're preventing people from — It just had blanks, at least when I was a district judge. I mean, the purpose of FRERETA is to prevent people from waiting who actually feel equivocal about it. And so getting everything right at the first instance does prevent that. Also, a straight remand means that the government will, you know, step up a little and not just stand up at the magistrate hearing and say, let me go over the penalties, but actually to say, whoops, just as the government did in Erskine, I want to make sure we're all on the same page. I misstated the penalties before. It's actually this and not that. Are we all in place on this? And even that wasn't good enough in Erskine, I would point out. Thank you, counsel. Thank you, Your Honor. United States v. Garrison is submitted. We'll hear Garcia v. Yarbrough.
judges: Trott, Kleinfeld, Ikuta